HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PATRICIA "POLLY" BLACKBURN; DAVID EUGENE CARPENTER; JACOB DAU; DENNIS FANT; BONIFACIO H. FORNILLOS; AKANELE A. IMO; JOSE M. LOPEZ; RALPH PETERSON; and MATHHEW J. STALEY,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES; WESTERN STATE HOSPITAL; DALE THOMSON, individually and in his official capacity as COO of Western State Hospital; and DR. MARY LOUISE JONES, individually and in her official capacity as Director of the Center for Forensic Studies.<br><br>Defendants. | Case No. CV11-05385<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION<br>(Dkt. #6) |

**I. INTRODUCTION**

This matter comes before the court upon Plaintiffs' Motion for a Preliminary Injunction. (Dkt. #6.) Plaintiffs are nurses and Psychiatric Security Attendants (PSA) at Defendant Western State Hospital (WSH). The group of Plaintiffs includes Caucasians, African-Americans, and members of other racial groups. The dispute arises out of administrative decisions related to the

care of M.P., a WSH patient who threatened to kill Marley Mann, an African American PSA. Neither M.P. nor Mann is a party to this litigation.

Plaintiffs primary allegation is that Defendants continue to maintain a policy that restricts darker-skinned PSAs from attending to M.P., and conversely, forces lighter-skinned PSAs to have more contact with M.P. Plaintiffs ask the Court to issue an order enjoining Defendants "from enforcing any policy or practice that segregates or assigns workers at Western State Hospital by race."

## II. FACTS

The Court has reviewed the briefings, declarations, and exhibits carefully. This Order includes only the facts necessary to decide the Motion.

M.P. is one of the most dangerous patients at WSH. He was found not guilty by reason of insanity and has assaulted 70 people while at WSH. He is 6'4", 300 pounds, and deeply disturbed. He is housed in ward F-8.

In late March of 2011, M.P. directed racial slurs at Marley Mann, one of M.P.'s one-to-one caregivers. M.P. eventually threatened to kill Mann. Both Mann and Eddie Griffin (not a party) are African-American PSAs who were scheduled to give one-to-one care to M.P. over the weekend beginning on Saturday, April 1, 2011.

On Friday March 31, Lila Rooks, RN4, discussed staffing decisions for M.P. with several other nurse managers. At the conclusion of this discussion, Rooks decided to restrict African Americans from giving one-to-one care to M.P. over the weekend because she was concerned for the safety of African-American staff members. (Rooks Decl. ¶ 7.) Thus, Mann and Griffin were assigned to other areas for the weekend.

On Saturday, April 1, Plaintiff Patricia "Polly" Blackburn, RN2, was working as a charge nurse. One of Blackburn's duties was to assign PSAs to M.P. Normally, Blackburn would complete this task by assigning individuals off a "pull list." Allegedly, on this day, management put a new policy in place. Blackburn alleges that as she came on shift, the outgoing charge nurse gave her a piece of paper that said "no blacks no Joey[1] to F-8," and Barbara Yates, RN3, told Blackburn to assign white PSAs to F-8. (Blackburn Decl. ¶ 4.)

Blackburn was shocked at Yates' request, and asked her to confirm the management directive. At this point, the next three individuals on the pull-list were Plaintiffs Akanele Imo (black African), Dennis Fant (African-American), and Bonifacio Fornillos (Filipino). Yates called Blackburn back and told her to send Fornillos to F-8. Allegedly, Yates chose Fornillos because, of the three Plaintiffs on the pull list, he had the lightest skin tone. At 7:00 pm on Saturday, Candace Wight, RN3, sent an email to superiors and union members in which she expressed her opinion that the management directive was unlawful.

Wight's message was the beginning of a long email chain that reached the inbox of Defendant Dr. Mary Louise Jones on Sunday morning. While management formulated a response to staff concerns, Plaintiffs became upset and Plaintiff Blackburn filed an Administrative Report of Incidents (AROI) on either Monday or Tuesday. Darker-skinned Plaintiffs were upset that they were being segregated from M.P. on account of their race. Lighter-skinned Plaintiffs were upset that they had to work a disproportional amount of time with M.P.

On Monday, M.P.'s primary caregiver, Andrew Prisco, returned to work and clarified to managers that M.P. had targeted Mann, rather than African Americans generally. The parties dispute whether administrators assigned Griffin back to M.P. immediately. It is clear that on

---

[1] Plaintiff Jose "Joey" Lopez is a Filipino PSA.

ORDER - 3

Thursday, April 6, Kelly Saatchi, RN4, sent an email to managing nurses explaining that official policy was to restrict Mann from working with M.P. for Mann's safety.

Plaintiffs claim the policy of segregation still exists unofficially. Defendants claim there is no current policy that segregates employees on the basis of race, and that if a policy existed over the weekend of April 1, this was due to a miscommunication.

Plaintiffs filed their Complaint on May 19, alleging violations of Title VII and the Fourteenth Amendment. Plaintiffs' Motion for a Preliminary Injunction seeks an order enjoining Defendants "from enforcing any policy or practice that segregates or assigns workers at Western State Hospital by race."

**III. DISCUSSION**

A plaintiff seeking a preliminary injunction must establish: [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

**1. Likelihood of Success on the Merits**

Plaintiffs argue they are likely to succeed on the merits because the law allows no room for facial discrimination and Defendants enacted a facially discriminatory policy. Defendants respond that Plaintiffs will not succeed on the merits because WSH nurse managers made a temporary staffing decision that was justified by the danger M.P. posed to staff members.

Plaintiffs fail to establish they are likely to succeed on the merits because the record indicates a miscommunication occurred over the course of one weekend. M.P. targeted PSA Mann, but managers verbally communicated that the issue was about African Americans in general. This was a regrettable mistake, but it is unlikely this mistake amounts to a violation

under Title VII or the Constitution because it was unintentional and brief. Plaintiffs cite no legal authority that applies strict liability to Title VII or Constitutional violations.

In the declarations attached to their briefings, Plaintiffs say the policy continues unofficially and Defendants insist it does not. So far, Plaintiffs have failed to establish that a policy exists. Saatchi explained on April 6 that Mann, rather than African Americans in general, was restricted from attending to M.P. and there is evidence that Griffin has been working with M.P. regularly. (Prisco Decl. ¶8.) Plaintiffs have failed to show they are likely to succeed on the merits because the record indicates a miscommunication about a legitimate policy occurred over the weekend, and that currently, no discriminatory policy exists.

**2. Likelihood of Irreparable Harm in the Absence of Preliminary Relief**

Plaintiffs, citing *Brown v. Board of Education*, argue that state-sanctioned segregation is by itself an irreparable harm. Plaintiffs also argue that Plaintiff Blackburn could lose her nursing license for implementing a discriminatory policy. Defendants respond that Plaintiffs are not subject to any harm, irreparable or otherwise.

Plaintiffs have not established that irreparable harm will occur in the absence of preliminary relief. First, as stated earlier, Plaintiffs have failed to establish a current policy exists that would cause anyone harm. Second, assuming an unofficial policy still exists, it is a localized staffing decision made to protect staff members. Such a policy would not amount to the type of widespread state-sanctioned segregation at issue in *Brown*. Third, the argument that Blackburn would lose her nursing license for following directions from her superiors is meritless. Plaintiffs have failed to establish that anyone will suffer irreparable harm if the status quo is maintained.

### 3. Balance of Equities

Plaintiffs argue the balance of equities tips in their favor because Defendants will not suffer any harm by enforcing anti-discrimination laws and the Constitution. Defendants respond that WSH needs the flexibility to protect staff members from dangerous patients.

At this point, the balance tips in favor of Defendants because an injunction could lead to serious physical harm. If a patient said, "I'm going to kill any white/black person that comes near me," and Defendants were required to assign the next white/black PSA on the pull list to the patient, that PSA could suffer serious physical harm for which Defendants could at least theoretically be liable. In contrast, Plaintiffs are not put in any physical harm by the status quo. Thus, Plaintiffs fail to establish that the balance of equities tips in their favor.

### 4. Public Interest

Plaintiffs argue that an injunction would be in the public interest because it would merely enforce discrimination laws that are already on the books. Defendants respond that requiring WSH to assign caregivers without regard to the dangerous propensities of patients is not good public policy.

At this point, Defendants have the better argument. Plaintiffs have not established that an injunction would be in the public interest because they have not established a discriminatory policy exists. Even assuming that Defendants are currently restricting African Americans from working with M.P., the Court does not believe second-guessing experienced administrators at a dangerous worksite would be in the public interest.

## IV. CONCLUSION

Plaintiffs fail to establish that a discriminatory policy currently exists at WSH. Even assuming managers are currently assigning staff to M.P. on the basis of skin color, the Court will not issue an order that second-guesses managers and risks the safety of staff. *Winter* set forth clear requirements for obtaining preliminary injunctive relief, and here, Plaintiffs have failed to establish any of the *Winter* requirements. Therefore, Plaintiffs' Motion for a Preliminary Injunction is DENIED.

**IT IS SO ORDERED.**

Dated this 12th day of August, 2011.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE